EDWARD L. CLARK, RESPONDENT *v.* CHARLES W. OPDYKE, APPELLANT.

*Removal of actions to U. S. Courts under chap.* 137 *of* 1875 — *averments in petition not binding upon court.*

This action was brought to procure the removal of the three defendants, two of whom resided in New Jersey and one in New York, from their position as trustees under a mortgage given by the New York and Oswego Midland Railroad Company, and to prevent their acting as trustees *pendent lite*, on the ground that they had been guilty of certain fraudulent and collusive acts whereby the security of the bondholders had been impaired.

The defendant Opdyke, who resided in New Jersey, applied for the removal of the action to the United States Circuit Court, on the ground, among others, that there was a controversy in the suit wholly between the plaintiff and himself, which could be fully determined between them. *Held,* that as the defendants were jointly responsible for their acts as trustees, the plaintiff was entitled to prosecute them jointly, and that there was, therefore, no controversy between the plaintiff and the defendant Opdyke which could be wholly determined between them, and that the application was, therefore, properly denied.

The fact that the suit is brought to enjoin and restrain the defendants, is not a ground of removal under the act of 1875.

Under the act of Congress of 1875, providing that where there is a controversy, which is wholly between citizens of different States, and which can be fully determined as between them, either one or more of the plaintiffs or defendants may remove the suit to the Circuit Court, the averments contained in a petition for such removal are not conclusive upon the court, but the existence of the requisite facts must be ascertained by the court, and for that purpose the averments of the petition in regard to them may be controverted by the opposite party.

APPEAL from an order of the Special Term held in Oneida by Mr. Justice NOXON, denying the prayer of the appellant, Opdyke, to remove this cause, as to him, into the Circuit Court of the United States for the northern district of New York. The plaintiff is a resident of the State of New York. There are three defendants, Stevens and Opdyke, residents of New Jersey, and Hewitt, who at the time of the commencement of the action resided in New York. This action was commenced on the 6th of May, 1876, by the service of a summons and complaint; the latter prayed for a judgment removing said defendants as trustees and appointing others in their place, and that the defendants be enjoined from acting

as trustees *pendent lite*, and that special trustees be appointed meanwhile. On the twenty-fifth of May the defendant Opdyke entered his appearance, and at the same time presented his petition at the Oneida Special Term, praying for the removal of the cause. The petition avers, among other things, that the jurisdiction of the Circuit Court of the United States is involved in the suit; that the matter in dispute arises under the Constitution and laws of the United States; that the action is brought, among other things, for the purpose of restraining and enjoining the defendant Opdyke; and that there is a controversy in the suit wholly between the plaintiff and the defendant Opdyke, which can be fully determined between them. A sufficient bond was presented with the petition, and approved by the judge. The motion for an order of removal was heard upon the petition, on the return of an order to show cause, and upon an opposing affidavit made by one of the attorneys of the plaintiff. The affidavit alleged that this controversy is not wholly between citizens of different States, as alleged in the petition, nor is it a controversy arising under the Constitution and laws of the United States, but as set out in the complaint, is a suit in equity to remove the defendants, as trustees of an express trust created under an instrument executed in this State, on property wholly in this State, and for reasons provided for by the statutes and laws of this State. A copy of the complaint is among the papers submitted to the court.

*Alexander & Green*, for the appellant.

*Risley, Stoddard & Matteson*, for the respondent.

SMITH, J.:

The questions arising upon this appeal are controlled by the provisions of chapter 137 of the act of congress passed in 1875, so far as those provisions are applicable. That act was intended to determine the jurisdiction of the Circuit Courts of the United States, and to regulate the removal of causes from State courts, and it repealed all acts in conflict with its own provisions. We may, therefore, lay out of view the provisions of all prior acts of congress, whether incorporated in the revision of 1873, or not (R. S. of U. S., p. 113, § 639), so far as they are in conflict with the act of 1875. The

second section of the act of 1875 defines the cases in which a suit brought in a State court may be removed into the Circuit Court of the United States. It provides that any suit of a civil nature, at law or in equity, then pending, or thereafter brought in any State court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and arising under the Constitution or laws of the United States, or treaties made under their authority, or in which the United States shall be plaintiff or petitioner, or in which there shall be a controversy between citizens of different States, or a controversy between citizens of the same State claiming lands under grants of different States, or a controversy between citizens of a State and foreign States, citizens or subjects, either party may remove said suit into the Circuit Court of the United States for the proper district. It further provides that when in any suit mentioned in that section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit, etc. The section creates two distinct classes of cases, so far as the matter of citizenship is concerned : one, in which the difference of citizenship exists between all the plaintiffs, on the one hand, and all the defendants, on the other ; and a second class, in which less than the whole number of plaintiffs or defendants, by reason of a diversity of residence between themselves and the party opposed to them in a controversy in the suit which can be fully determined as between them, may apply to remove the entire cause. This construction was given to the second section, soon after the passage of the act, by the United States Circuit Court for the northern district of Illinois (DRUMMOND and BLODGETT, JJ., in the case of *Osgood* v. *Chicago, Danville and Vincennes R. R. Co. et al.*, 14 Am. Law Reg. [N. S.], 506), and the decision in that case was recently reaffirmed in the Circuit Court for the northern district of New York (JOHNSON, J., in *Patterson* v. *Chapman et al.* and *Bronson et al.* v. *The Same*, MS. opinion). Obviously the present case is not within the first class. Is it in the second ? It is not, unless the suit involves a controversy between the plaintiff and the petitioning defendant, Opdyke, which can be fully determined between them. The act of 1866 (chap. 173) first gave to one of several defendants the right of

removal. But under that act only the particular controversy which concerned him could be removed, without the consent of the plaintiff. Under the act of 1875 the granting of the application of one of several parties will remove the whole suit. What, then, is the nature of the controversy in the present action? The counsel for the appellant insists that the averment in the petition on that subject is conclusive, and that the State court cannot inquire into its truth. That, it is said, is for the United States courts alone. The act of 1833 (4 U. S. Stat. at L., 638), and the act of July 27, 1868, provided that certain matters should be stated in the petition. Under those acts, it was held that when the petition complied with the statute in that respect, the matters so stated could not be controverted on the hearing of the application to remove the cause. (*Dennistoun* v. *Draper*, 5 Blatch., 338; *Heath* v. *Austin*, 12 id., 320; *Fisk* v. *Union Pacific R. R. Co.*, 10 Abb. [N. S.], 457.) The act of 1875 does not prescribe what the petition shall contain, but it provides that when certain facts specified in the act exist, a petition may be made and filed for the removal of the suit. The existence of the requisite facts must be ascertained by the court, and to that end the averments of the petitioner in regard to them may be controverted by the opposite party. Under the act of 1789, which was like that of 1875, in this particular, affidavits or other proofs were frequently received to controvert the petition. (*Anderson* v. *Manufacturer's Bank*, 14 Abb. R., 436; *Fisk* v. *The Chicago, Rock Island and Pacific R. R. Co.*, 3 Abb. [N. S.], 453; *Smith* v. *Butler*, 38 How. Pr., 192; *New York Piano Co.* v. *New Haven Steamboat Co.*, 2 Abb. [N. S.], 357.)

We are, then, to determine, from the papers before us, whether there is in the suit a controversy between the plaintiff and the defendant Opdyke, which can be fully determined as between them. For that purpose we may look into the complaint, which is referred to in the affidavit read on the part of the plaintiff in opposition to the motion, and is submitted to us with the other appeal papers. The case made by the complaint is, in brief, that the defendants are the trustees in and under a certain trust deed or mortgage executed by the New York and Oswego Midland Railroad Company, a corporation organized under the laws of the State of New York, to construct and operate a railroad in said State, by which mort-

gage said company created a first lien upon its railroad to secure the payment of certain coupon bonds payable in gold, issued by said company, one of which, for the payment of $1,000, with interest, is owned by the plaintiff; that the defendants, as such trustees, by means of certain fraudulent and collusive acts set out in the complaint, in violation of their duty, have wasted the property of said company, and impaired the security of the bondholders, and that the plaintiff brings the action in behalf of himself and all the other bondholders under said mortgage who may join as plaintiffs in the action. The complaint prays for a judgment removing said defendants as trustees, and appointing others in their place, and that the defendants be enjoined from acting as trustees *pendente lite*, and that special trustees be appointed meanwhile. It appears that the original trustees named in the mortgage resided in the State of New York. The mortgage provides that in case of a vacancy in the trusteeship, by resignation or otherwise, the railroad company of the one part, and the surviving trustees of the other, shall select a new trustee to fill the vacancy, and in case of a disagreement, the holder of not less than twenty per cent of the bonds secured by said mortgage may apply to the Supreme Court of the State of New York to appoint a new trustee to fill the vacancy. The complaint avers that the defendants Opdyke and Stevens were residents of New Jersey when they were appointed trustees to fill vacancies, and that they were fraudulently and collusively appointed, with the design of placing the management of the said mortgage beyond the reach and control of the bondholders and of the Supreme Court of the State of New York.

It seems very clear, upon the case presented by the complaint, that the plaintiff has a right to prosecute the defendants jointly, and that there is no controversy between him and the defendant Opdyke, that can be wholly determined as between them. The trustees have a community of interest and of responsibility. It is the duty of each one to protect the trust property from the acts of his colleagues. For a neglect of that duty, whereby any one or more of several co-trustees have been enabled to misappropriate, or otherwise occasion any loss to the trust estate, the others, as a general rule, will be personally answerable. (Hill on Trustees, 309.) The authorities are not entirely in accord as to whether, in a case where

there are several trustees who are all implicated in a common breach of trust, the *cestui que trust*, on seeking relief in equity, must bring his suit against all of them, or may sue one of them separately, at his election. In *Walker* v. *Symonds* (3 Swanst. R., 75), Lord ELDON said, that in such case, he may proceed against one, or all, at his election. But in *Munch* v. *Cockerell* (8 Sim. R., 219) Vice-Chancellor SHADWELL held that the suit must be against all the trustees then living. In a careful opinion he reviewed the case of *Walker* v. *Symonds*, and remarked that it was doubtful whether Lord ELDON, in saying that the *cestui que trust* "may proceed" against one or all, meant any thing more than that he may proceed after decree against all. Perhaps, however, the better opinion is that in such a case the tort may, by analogy to the law, be treated as several, as well as joint, at the election of the plaintiff. (Story's Eq. Pl., 213, and cases there cited in note 4.) But either rule is fatal to the claim of the appellant. Whether the plaintiff is compelled to sue all jointly, or may do so, at his option, he has sued all jointly in this action. He has elected to treat the liability of the defendants as joint, and against them, jointly, he seeks relief. There is not, therefore, a separate controversy between him and the defendant Opdyke, and the case is not within either of the classes of cases provided for by the act of 1875, in respect to diversity of citizenship.

The petitioner also claims the right of removal on the ground that the matter in dispute arises under the Constitution and laws of the United States. The averment in the petition in that regard is controverted, and there is nothing in the complaint to warrant the claim. The only circumstance that can be laid hold of to countenance it is, that the trustees are charged, among other allegations of fraud, with having caused certain suits to be instituted in the Circuit Court of the United States for the southern district of New York, against the said railroad company and others, and with having procured, in that court, one or more of said trustees to be appointed receivers of the property of the company, in collusion with the officers of the company, in derogation of their duties as trustees, and in defiance of the rights and interests of the bondholders, and that the same proceedings were void for want of jurisdiction. The bare statement of the allegations show, that they involve no matter in dispute arising under the federal Constitution or laws. If the

defendants have used the orders or decrees of the Circuit Court as a means of perpetrating fraud, at the expense of the plaintiff, the State courts, nevertheless, have jurisdiction of the matter.

The only other ground on which the appellant claims the right of removal is that the action is brought to enjoin and restrain the defendants. That was a ground of removal under the act of 1866 and the Revised Statutes (p. 113, § 639), but it is not so under the act of 1875.

The order of the Special Term denying the application is affirmed, with costs and disbursements.

MULLIN, P. J., and TALCOTT, J., concurred.

Order of Special Term affirmed, with ten dollars costs and disbursements.

NOTE.—We are informed by a note appended to the points of the respondent's counsel that since this appeal was taken a motion was made by the plaintiff to the United States Circuit Court to remand the cause to the State court, against the defendant Stevens, who had obtained an *ex parte* order removing this action from the State court to the Circuit Court. The Circuit Court remanded the action, and held that it was not a case to be removed, and that that court had no jurisdiction of the action under the principle laid down in the opinion of JOHNSON, J., above referred to.